# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MAXIMO CASTRO, *a/k/a Carl Worthington*, | : | Civil No. 1:21-CV-02162 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| UNITED STATES OF AMERICA, *et al.*, | : | |
| | : | |
| Defendants. | : | Judge Jennifer P. Wilson |

## <u>MEMORANDUM</u>

Plaintiff's complaint raises claims under the Federal Tort Claims Act ("FTCA") and *Bivens*, alleging that he was forced into a cell contaminated with the Covid-19 virus with another inmate who was exhibiting signs of Covid-19 at the time. (Doc. 1.) He alleges that he contracted Covid-19 and is continuing to experience symptoms of "long covid" and extreme mental anguish. (*Id.*) Defendants have filed a joint motion to dismiss and motion for summary judgment. (Doc. 21.) Prior to Defendants filing their motion, Plaintiff filed requests that Dr. Sommer and the unnamed medical professionals be voluntarily dismissed as defendants in this action. (Docs. 16, 20.) The court will grant Plaintiff's voluntary dismissal requests and grant Defendants' joint motion for dismissal and summary judgment.

**BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff, a federal inmate currently housed in the United States Penitentiary, Canaan ("USP-Canaan"), initiated this action by filing a complaint in December of 2021, alleging that in December of 2020, he was placed in a cell with another inmate who was exhibiting symptoms of Covid-19.  (Doc. 1, p. 4.)[1]  Plaintiff alleges that the cell had previously been occupied by an inmate who had tested positive for Covid-19, and it had not been properly decontaminated prior to his placement in the cell.  (*Id.*)  He further alleges that after being housed with the symptomatic inmate in the contaminated cell, he contracted Covid-19.  (*Id.*)  He alleges that he has since suffered from symptoms of "long Covid," and extreme mental anguish.  (*Id.*)  He brought a claim under the FTCA against the United States of America and claims under *Bivens* against the unit manager at USP-Canaan, P. Kurilla, the Warden at USP-Canaan, Eric Bradley, the clinical director at USP-Canaan, Diane Sommer, and unnamed physician assistant and doctors. (*Id.*)

On January 21, 2022, the court entered an order granting Plaintiff's motion to proceed *in forma pauperis* and directing service on the named defendants.  (Doc. 10.)  This same order granted Plaintiff thirty days to provide the court with sufficient information to identify of the unknown medical professionals listed as

---

[1] For ease of reference, the court utilizes page numbers from the CM/ECF header.

defendants.  (*Id*.)  On March 25, 2022, Plaintiff stated that he had been unable to identify these unknown medical professionals and consented to these unnamed defendants being dismissed from the action.  (Doc. 16.)

On April 6, 2022, Defendants filed a notice giving Defendant thirty days in which to file a certificate of merit or the United States would seek dismissal of all FTCA medical professional liability claims.  (Doc. 17.)  On April 18, 2022, Plaintiff filed a response to Defendants' notice stating that he did not have the physical or financial ability to obtain the necessary certificate of merit and requested that Dr. Sommer and the unnamed medical professionals be dismissed as defendants in this action.  (Doc. 20.)

On May 23, 2022, Defendants filed a joint motion to dismiss and a motion for summary judgment.  (Doc. 21.)  They filed a brief in support and statement of undisputed material facts on June 6, 2023.  (Docs. 24, 25.)  On June 16, 2022, Defendant filed a brief in opposition to the pending motion.  (Doc. 27.)

The court will now address Plaintiff's request to voluntarily dismiss Dr. Sommer and the unnamed medical professionals as defendants in this case. Likewise, the court will address Defendants' pending joint motion to dismiss and motion for summary judgment.

## JURISDICTION AND VENUE

The court has jurisdiction over Plaintiff's action pursuant to 28 U.S.C. §

1331, which allows a district court to exercise subject matter jurisdiction in civil

cases arising under the Constitution, laws, or treaties of the United States.  Venue

is proper in this district because the alleged acts and omissions giving rise to the

claims occurred at USP-Canaan, located in Wayne County, Pennsylvania, which is

located within this district.  *See* 28 U.S.C. § 118(b).

## MOTION TO DISMISS STANDARD

In order "[t]o survive a motion to dismiss, a complaint must contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible

on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.*

*v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible on its face "when the

plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged."  *Id*. (quoting

*Twombly*, 550 U.S. at 556).  "Conclusory allegations of liability are insufficient" to

survive a motion to dismiss.  *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir.

2019) (quoting *Iqbal*, 556 U.S. at 678–79).  To determine whether a complaint

survives a motion to dismiss, a court identifies "the elements a plaintiff must plead

to state a claim for relief," disregards the allegations "that are no more than

conclusions and thus not entitled to the assumption of truth," and determines

4

whether the remaining factual allegations "plausibly give rise to an entitlement to relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012) *abrogated on other grounds by Mack v. Yost*, 968 F.3d 311 (3d. Cir. 2020).

When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)).  In addition to reviewing the facts contained in the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents" attached to a defendant's motion to dismiss if the plaintiff's claims are based upon these documents.  *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc*., 998 F.2d 1192, 1196 (3d Cir. 1993)).

The pleadings of self-represented plaintiffs are to be liberally construed and held to a less stringent standard than formal pleadings drafted by attorneys.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Fantone v. Latini*, 780 F.3d 184, 193 (3d Cir. 2015), as amended (Mar. 24, 2015).  Self-represented litigants are to be granted leave to file a curative amended complaint even when a plaintiff does not

seek leave to amend, unless such an amendment would be inequitable or futile.

*See Est. of Lagano v. Bergen Cnty. Prosecutor's Off.*, 769 F.3d 850, 861 (3d Cir.

2014); *see also Phillips*, 515 F.3d at 245. A complaint that sets forth facts which

affirmatively demonstrate that the plaintiff has no right to recover is properly

dismissed without leave to amend. *Grayson v. Mayview State Hosp.*, 293 F.3d

103, 106 (3d Cir. 2002).

## MOTION FOR SUMMARY JUDGMENT STANDARD

A court may grant a motion for summary judgment when "there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is material if resolution of

the dispute "might affect the outcome of the suit under the governing law."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is

not precluded by "[f]actual disputes that are irrelevant or unnecessary." *Id.* "A

dispute is genuine if a reasonable trier-of-fact could find in favor of the

nonmovant' and 'material if it could affect the outcome of the case." *Thomas v.

Tice*, 943 F.3d 145, 149 (3d Cir. 2019) (quoting *Lichtenstein v. Univ. of Pittsburgh

Med. Ctr.*, 691 F.3d 294, 300 (3d Cir. 2012)).

In reviewing a motion for summary judgment, the court must view the facts

in the light most favorable to the non-moving party and draw all reasonable

inferences in that party's favor. *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 288

6

(3d Cir. 2018) (citing *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 538 (3d Cir. 2006)).  The court may not "weigh the evidence" or "determine the truth of the matter."  *Anderson*, 477 U.S. at 249.  Instead, the court's role in reviewing the facts of the case is "to determine whether there is a genuine issue for trial."  *Id.*

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  The non-moving party must then oppose the motion, and in doing so "'may not rest upon the mere allegations or denials of [its] pleadings' but, instead, 'must set forth specific facts showing that there is a genuine issue for trial.  Bare assertions, conclusory allegations, or suspicions will not suffice.'"  *Jutrowski*, 904 F.3d at 288–89 (quoting *D.E. v. Cent. Dauphin Sch. Dist.*, 765 F.3d 260, 268–69 (3d Cir. 2014)).

Summary judgment is appropriate where the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex*, 477 U.S. at 322.  "The mere existence of a scintilla of evidence in support

of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

DISCUSSION

### A. Dr. Sommer and Unnamed Medical Professionals Will Be Dismissed as Defendants.

Plaintiff has twice petitioned this court to voluntarily remove defendants from this action. The first was a request that the unnamed medical professionals be removed as defendants. (Doc. 16.) The second was a request that Dr. Sommer and the unnamed medical professionals be removed as defendants in this action. (Doc. 20.) Federal Rule of Civil Procedure 41 grants the court authority to enter an order dismissing claims or parties at the plaintiff's request on terms that the court considers proper. Therefore, the court will grant Plaintiff's requests and dismiss Dr. Sommer and the unnamed medical professionals as defendants in this action without prejudice to any action Plaintiff may later bring against these individuals.

### B. Facts Material to the Claims.

#### 1. Covid-19 Symptoms and Diagnosis

In the complaint, Plaintiff alleges that on December 1, 2020, while housed at USP-Canaan, he and Inmate Derrick Davis ("Davis") were forced by Defendant

8

Kurilla to move into a cell that two days prior had housed two inmates who had tested positive for Covid-19.  (Doc. 1, p. 4.)  He alleges that the cell had not been "properly decontaminated."  (*Id*.)  Furthermore, he alleges that on December 1, 2020, Davis was experiencing "flu-like symptoms."  (*Id*., p. 4.)  Plaintiff alleges that both he and Davis objected to the forced consolidation into this particular cell. (*Id*.)  He alleges that in response to their objections, Defendant Kurilla stated that "this is coming straight from the Warden."  (*Id*.)  Plaintiff alleges that on December 4, 2020, Davis tested positive for Covid-19, and on December 10, 2020, he tested positive for Covid-19.  (*Id*.)  Plaintiff acknowledges that the BOP has stated that both he and Davis tested negative for Covid-19 on November 28, 2020, prior to the consolidation.  (*Id*.)  He alleges that he developed "long Covid" and extreme mental anguish.  (*Id*.)  He alleges that the "medical staff are not providing adequate medical care."  (*Id*.)

In their statement of undisputed material facts, Defendants allege that on December 1, 2020, Plaintiff was placed in a new cell where he was housed for ten days.  (Doc. 24, ¶ 4.)  Then, on December 4, 2020, during medical rounds, Plaintiff denied Covid-19 symptoms, made no other complaints, and was given a Covid-19 test.  (*Id*., ¶ 5.)  That test was negative.  (*Id*.)  Defendants allege that subsequent tests on December 8th and December 9th, 2020, were also negative.  (*Id*., ¶ 6.)  On December 10, 2020, Plaintiff reported to health services with a headache and body

aches, his Covid-19 test was positive, and he was placed in isolation. (*Id.*, ¶ 7.) On December 17, 2020, Dr. Sommer ordered a Covid-19 test, the results of which indicated that Covid-19 was detected. (*Id.*, ¶ 8.) On December 20, 2020, Plaintiff denied symptoms of Covid-19 and he had completed his required ten-day isolation. (*Id.*, ¶ 9.) Following this, Plaintiff did not report Covid-19 symptoms in subsequent medical appointments and quarantine periods. (Id., ¶¶ 18–21.)

Plaintiff provided an affidavit from Davis in support of his brief in opposition to the pending motion. (Doc. 27.) In it, Davis states that he tested negative for Covid-19 on November 28, 2020, but had experienced close contact on November 23, 2020 with another inmate who had tested positive. (*Id.*, p. 8.) He states that despite his negative test, he believed he was already infected with Covid-19 on November 28, 2020. (*Id.*) He states that on that same date, he reported to medical staff that he was expediting flu-like symptoms including congestion, cough, head and body aches, chills, cold sweats, weakness, and the complete loss of taste and smell. (*Id.*) A nurse told him he was a "suspected positive" for Covid-19 and that he should be kept "isolated individually." (*Id.*) He states that this nurse taped a notice on the outside of his door regarding his Covid-19 status. (*Id.*) He states that he reported his symptoms again on November 29, 2020, and November 30, 2020, and was told he was experiencing the common cold. (*Id.*, p. 9.) Davis states that on December 1, 2020, Defendant Kurilla

ordered him and Plaintiff to move from cells where they were the sole occupants into a single cell to share. (*Id.*) He stated that both he and Plaintiff objected to such consolidation and that he told Defendant Kurilla about his symptoms. (*Id.*) After Defendant Kurilla threatened them with disciplinary action, Davis and Plaintiff moved into the cell together. (*Id.*) He states that on December 1, 2020, several other cells were empty and the two inmates could have been housed in cells individually. (*Id.*) On December 4, 2020, Davis tested positive for Covid-19 and was moved to quarantine. (*Id.*, p. 10.)

### 2. Administrative Remedies

As part of their statements of facts, Defendants allege that a review of the BOP database reveals that Plaintiff has not filed a single administrative tort claim while in custody of the BOP. (Doc. 24, ¶¶ 23–24.) However, a review of the Administrative Remedy Generalized retrieval system shows that Plaintiff has filed for nine administrative remedies while in BOP custody. (*Id.*, ¶ 30.) Of these nine, he has only exhausted one request, No. 1033139-F1-A1. (*Id.*, ¶ 31.) Defendants characterize this one exhausted request as a request for compassionate release. (*Id.*) Defendants assert that Plaintiff has not filed or exhausted any administrative remedies related to any of the claims raised in this *Bivens* action. (*Id.*, ¶ 33.)

In response to Defendants' statements of facts, Plaintiff filed what he alleged is a copy of a tort claim dated December 31, 2020, that he alleges he placed in the

mailbox on his unit in USP-Canaan on that same date. (Doc. 27, pp. 1, 15–16.) He states that "[i]f there is no record of this Tort Claim being received, then U.S.P. Canaan Staff clearly and obviously caused it to vanish instead of mailing it to the Region in order to shield themselves from being sued." (*Id*., pp. 1–2, 15–16.) The document is standard form 95, dated December 31, 2020, setting forth allegations of negligence and deliberate indifference, and requests monetary compensation related to Plaintiff's Covid-19 exposure at USP-Canaan. (*Id*. at pp. 15–16.) This form is unsigned. (*Id.*)

Plaintiff also filed the completed appeal form for grievance number 1066139-F1-A1 and the BOP's response to the appeal. (Doc. 27, pp. 13–14.) Plaintiff's appeal form states the following as his reason for the appeal:

> U.S.P. Canaan staff violated C.D.C. recommendations by forcing inmate Worthington to cohort with a Covid-19 infected inmate resulting in inmate Worthington becoming infected with Covid-19. Worthington suffered severe symptoms and still suffers from "long hauler" symptoms to this day. U.S.P. Canaan staff's actions demonstrated deliberate indifference towards inmate Worthington's health and safety. Inmate Worthington requests to be compensated for his pain and suffering.

(*Id*., p. 13.) The document includes verification that this appeal form was received by the Administrative Remedy Section of The BOP on August 4, 2021. (*Id*.) The response to this appeal stated the following:

> This is in response to your Central Office Administrative Remedy Appeal wherein you challenge the denial of your request for a Reduction in Sentence (RIS) based on extraordinary and compelling

reasons.  Specifically, you request a compassionate release due to your vulnerability to COVID-19 infection due to underlying health conditions.  For relief, you request a RIS.

(*Id*., p. 14.)  Neither party has provided a copy of the initial request for remedy in grievance number 1066139-F1-A1.

### C. Defendants' Motion for Summary Judgment Will Be Denied To The Extent It Is Based On Plaintiff's Failure to Exhaust Administrative Remedies.

The crux of Defendants' motion for summary judgment is based on the premise that Plaintiff failed to exhaust his administrative remedies prior to filing the instant action.  (Doc. 25, pp. 17–24.)  The Prison Litigation Reform Act of 1995 (PLRA), 42 U.S.C. § 1997e et seq., requires prisoners to exhaust available administrative remedies before suing prison officials for alleged constitutional violations.  *See id.* § 1997e(a); *Ross v. Blake*, 578 U.S. 632, 639, 642 (2016) (explaining that only "available" remedies must be exhausted).  Proper exhaustion is mandatory, even if the inmate is seeking relief—like monetary damages—that cannot be granted by the administrative system.  *See Woodford v. Ngo*, 548 U.S. 81, 85 (2006).

However, there are situations in which a grievance procedure may be rendered "unavailable" to an inmate, such as when a prison official thwarts an inmate's ability to use it, *Ross*, 578 U.S. at  643–44, when intimidation by means of "serious threats of retaliation and bodily harm" prevent an inmate from filing,

13

*Rinaldi v. United* States, 904 F.3d 257, 266-67 (3d Cir. 2018), or when a prison has "rendered its administrative remedies unavailable . . . when it failed to timely (by its own procedural rules) respond to [an inmate's] grievance and then repeatedly ignored his follow-up requests for a decision on his claim," *Robinson v. Superintendent Rockview SCI*, 831 F.3d 148, 154 (3d Cir. 2016).

Plaintiff's complaint fails to address whether he exhausted his administrative remedies.  (Doc. 1.)  Defendants' motion asserts that he failed to exhaust his administrative remedies in both the FTCA claim and the *Bivens* action.  (Doc. 25, p. 17–24.)

### 1.  FTCA Claim

Plaintiff raises an FTCA claim in his complaint alleging that he was knowingly placed in a life-threatening situation when he was placed in a Covid-19 contaminated cell with another inmate exhibiting symptoms of Covid-19.  (Doc. 1, p. 5.)  Defendants allege that they are entitled to summary judgment on this claim because "[a] claim under the FTCA must first be presented to the appropriate federal agency and be denied by the agency before any individual can file suit in federal court."  (Doc. 25, p. 14 citing 28 U.S.C. § 2675(a)).

"The statutory language is clear that a court does not have jurisdiction before administrative remedies have been exhausted, and a court must dismiss any action that is initiated prematurely."  *Wilder v. Luzinski*, 123 F. Supp. 2d 312, 313 (E.D.

Pa. 2000) (citing *McNeil v. United States*, 508 U.S. 106 (1993)).  In support of

their argument, Defendants have attached a printout from the Content Manager, the

electronic database tracking administrative claims filed by inmates, as evidence

that Plaintiff had not filed a single administrative tort claim while in BOP custody.

(Doc. 24, p. 6; Doc. 24-1, pp. 2, 73; Doc. 25, p. 15.)  In response, Plaintiff

provided what he alleged is a copy of a tort claim dated December 31, 2020, that

he alleges he placed in the mailbox on his unit in USP-Canaan on that same date.

(Doc. 27, p. 1.)  Plaintiff states that "[i]f there is no record of this Tort Claim being

received, then U.S.P. Canaan Staff clearly and obviously caused it to vanish

instead of mailing it to the Region in order to shield themselves from being sued."

(*Id*., at pp. 1–2, 15–16.)  The attached document is standard form 95, dated

December 31, 2020, and sets forth allegations of negligence and deliberate

indifference, and requests monetary compensation.  (*Id*. at pp. 15–16.)  However,

the form is unsigned.  (*Id*.)

     While the form is unsigned, and Plaintiff has provided no evidence absent

his assertion that it was placed in the mail on December 31, 2020, Plaintiff has

rebutted the evidence presented by Defendants regarding the administrative

exhaustion of the FTCA claim.  Therefore, he has established that there is a general

issue of material fact regarding whether or not he presented his claim to the

appropriate federal agency.  As such, the court cannot grant summary judgment on this legal theory.

### 2. *Bivens* Action

Similar to the FCTA claim, Defendants have submitted evidence in support of their assertion that Plaintiff failed to exhaust his administrative remedies prior to filing the instant *Bivens* claims.  (Doc. 24-1, pp. 3, 90–95.)  Specifically, Defendants allege that their evidence supports the finding that Plaintiff filed nine remedies throughout his incarceration and none of those remedies addressed the issues raised in the complaint.  (Doc. 24-1, p. 3.)  Defendants asserts that of those nine remedies, Plaintiff only exhausted one, numbered 1066139-F1-A1, and it was regarding compassionate release and not related to the instant *Bivens* action.  (Doc. 24, p. 8; Doc. 25, p. 16.)  In response, Plaintiff provided the appeal form for grievance number 1066139-F1-A1 and the BOP's response.  (Doc. 27, pp. 13–14.)  Plaintiff's appeal form addresses the alleged exposure to Covid-19 as the reason for his appeal.  (*Id*., p. 13.)  The document was received by the Administrative Remedy Section of the BOP on August 4, 2021.  (*Id*.)  Yet, the response to this appeal denies a request for compassionate release without addressing the alleged Covid-19 exposure.  (*Id*., p. 14.)

Here, there appears to be an inconsistency in what Plaintiff alleged and how the appeal was characterized.  What was raised in the initial request for remedy is

16

unknown because it was not provided to the court.  What is known is that Plaintiff

addressed the issues raised in the present *Bivens* action in the appeal.  Therefore,

there is a genuine issue of material fact regarding whether or not Plaintiff properly

raised these issues in his initial request for remedy and whether he then exhausted

his administrative remedies.  As such, Plaintiff's motion for summary judgment

premised on the failure to exhaust his administrative remedies will be denied.

### D. Defendants' Motion to Dismiss the FTCA Claims Will Be Granted.

Defendants' brief in support argues that the FTCA claims should be

dismissed because this court lacks jurisdiction to consider such claims and, in the

alternative, that the complaint fails to state a claim for negligence under Fed. R.

Civ. P. 12(b)(6).  (Doc. 25, pp. 33–39.)

### 1. Jurisdiction

"The FTCA offers a limited waiver of the federal government's sovereign

immunity from civil liability for negligent acts of government employees acting

within the scope of their employment."  *Rinaldi*, 904 F.3d at 273; *see also* 28

U.S.C. § 1346(b)(1).  "[T]he FTCA does not itself create a substantive cause of

action against the United States; rather, it provides a mechanism for bringing a

state law tort action against the federal government in federal court.  Thus, 'the

extent of the United States' liability under the FTCA is generally determined by

reference to state law.'"  *In re Orthopedic Bone Screw Prod. Liab. Litig.*, 264 F.3d

344, 361-62 (3d Cir. 2001) (quoting *Reo v. U.S. Postal Serv.*, 98 F.3d 73, 75 (3d Cir. 1996)).

However, there is a significant limitation on FTCA liability, referred to as the "discretionary function exception," ("DFE"). *S.R.P. ex rel. Abunabba v. United States*, 676 F.3d 329, 332 (3d Cir. 2012); 28 U.S.C. § 2680(a). The DFE to the FTCA eliminates jurisdiction "for claims based upon the exercise of a discretionary function on the part of any employee of the government." *Baer v. United States*, 722 F.3d 168, 172 (3d Cir. 2013) (citing 28 U.S.C. § 2680(a)). The exception "marks the boundary between Congress'[s] willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals." *S.R.P. ex rel. Abunabba*, 676 F.3d at 332 (quoting *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 808 (1984)). The exception applies to discretionary actions "whether or not the discretion involved be abused." 28 U.S.C. § 2680(a); *Merando v. United States*, 517 F.3d 160, 167 (3d Cir. 2008). The government bears the burden of establishing that the DFE applies. *S.R.P. ex rel. Abunabba*, 676 F.3d at 333 (citation omitted).

When faced with a DFE challenge, the court must first identify the conduct at issue in the FTCA claim. *Id.* at 332. Once the conduct is identified, the court

performs a two-step inquiry to determine if the DFE immunizes the government from an FTCA claim arising out of that conduct.  *Id.* at 332–33.

First, the court considers whether the conduct at issue "is a matter of choice for the acting employee" because "conduct cannot be discretionary unless it involves an element of judgment or choice." *Baer*, 722 F.3d at 172.  If a federal statute, regulation, or policy dictates a course of action for a federal employee to follow, the DFE cannot apply because "the employee has no rightful option but to adhere to the directive." *S.R.P. ex rel. Abunabba*, 676 F.3d at 333 (quoting *Berkovitz v. United States*, 486 U.S. 531, 536 (1988)).

If a specific course of conduct is not prescribed for the employee, the court proceeds to the second step. *Id.*  At step two, because the challenged conduct involves an element of judgment or choice, the court must determine "whether that judgment is of the kind that the [DFE] was designed to shield." *United States v. Gaubert*, 499 U.S. 315, 322–23 (1991). That is because the DFE "protects only governmental actions and decisions based on considerations of public policy." *Id.* at 323 (quoting *Berkovitz*, 486 U.S. at 537). The focus of this inquiry is not on the employee's subjective intent in exercising discretion, but "on the nature of the actions taken and . . . whether they are susceptible to policy analysis." *Id.* at 325. As the Supreme Court has explained, "[t]here are obviously discretionary acts performed by a Government agent that are within the scope of his employment but

not within the [DFE] because these acts cannot be said to be based on the purposes that the regulatory regime seeks to accomplish." *Id.* at 325, n.7.  However, "if a regulation allows the employee discretion, the very existence of the regulation creates a strong presumption that a discretionary act authorized by the regulation involves consideration of the same policies which led to the promulgation of the regulations." *Baer*, 722 F.3d at 172–73 (quoting *Gaubert*, 499 U.S. at 324).

Here, the alleged conduct is Plaintiff being forced into a contaminated cell with another inmate who was displaying symptoms of Covid-19 at the time.  (Doc. 1, p. 4.)  As to the first step, Defendants contend that, because the CDC's guidance was not mandatory for the BOP, there was no prescribed course of action and thus the federal employees' actions were a product of judgment or choice.  (Doc. 25 at 35 (citing *Santiago v. United States*, No. 7:21CV00436, 2022 WL 790805, at *2 (W.D. Va. Mar. 14, 2022).)  Defendants are correct.  The CDC provided some legally binding orders and guidance with respect to COVID-19, but those mandatory requirements applied only to domestic public transportation and international travel.  *See Coronavirus Disease 2019 (COVID-19): CDC Orders*, Centers for Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/cdcresponse/laws-regulations.html (last visited Jan. 10, 2023).

Defendants argue that the second step, determining whether that judgment is of the kind that the DFE was designed to shield, is met because "the development

and implementation of safety protocols in federal prisons is unquestionably based on consideration of public policy." (Doc. 25, p. 35 citing *Santiago*, 2022 WL 790805, at *3.) The court agrees. The Supreme Court has held that "[p]rison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Whitely v. Albers*, 475 U.S. 312, 321–22 (1986) *citing Bell v. Wolfish,* 441 U.S. 520, 547 (1979). Therefore, Defendants have met their burden of establishing that the DFE applies. As such, this court is divested of jurisdiction to consider the FTCA claims, and such claims are dismissed.

### E. Plaintiff's Motion for Summary Judgment Regarding the *Bivens* Deliberate Indifference Action Will Be Granted and the Conditions-of-Confinement Claim Will Be Dismissed.

Defendants characterize Plaintiff's complaint as raising a deliberate indifference claim under the Eighth Amendment. (Doc. 25, p. 24–29.) In doing so, Defendants focus on the alleged lack of treatment that Plaintiff received following his positive Covid-19 test, with little argument regarding the crux of Plaintiff's complaint: that he only contracted Covid-19 because he was allegedly placed in a contaminated cell with another inmate who was exhibiting Covid-19 symptoms. (*Id*.) In the complaint, Plaintiff alleges that "[a]s for the Constitutional claim, clearly Warden Bradley and Unit Manager Kurilla were deliberately

21

indifferent to the very serious medical issue, and by forcing the cell consolidation noted above, violated Plaintiff's Eighth Amendment right to be free from the imposition of cruel and unusual punishment." (Doc. 1, p. 5.)  Therefore, this court will address Plaintiff's constitutional claims as a deliberate indifference action brought under *Bivens*.  However, the court also recognizes that the complaint can be construed as a conditions-of-confinement claim under the Eighth Amendment. Defendants failed to address any general conditions-of-confinement claim in their joint motion to dismiss and motion for summary judgment. (Docs., 21, 25.) However, the court can address such a claim pursuant to 42 U.S.C. 1915(e)(B)(ii) under the Fed. R. Civ. P. 12(b)(6) standard because Plaintiff is proceeding *in forma pauperis*.  Therefore, the court will address both legal theories in the *Bivens* context.

"*Bivens* is the short-hand name given to causes of action against federal officials for alleged constitutional violations." *Bistrian*, 912 F.3d at 88.  In the case giving the doctrine its name, the Supreme Court held there is a cause of action for damages when a federal agent, acting under color of his authority, conducts an unreasonable search and seizure in violation of the Fourth Amendment. *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 397 (1971).  To date, the Supreme Court has only recognized a *Bivens* remedy in the context of the Fourth, Fifth, and Eighth Amendments.  *See Id*. at 388 (Fourth

Amendment prohibition against unreasonable searches and seizures); *Davis v. Passman*, 442 U.S. 228 (1979) (Fifth Amendment gender-discrimination in the employment context); *Carlson v. Green*, 446 U.S. 14 (1980) (Eighth Amendment Cruel and Unusual Punishment Clause for failure to provide an inmate adequate medical treatment).  The Supreme Court cautioned against expanding *Bivens* beyond the three established circumstances where it has formally acknowledged the availability of a *Bivens* remedy.  *Ziglar v. Abbasi*, 137 S.Ct. 1843, 1857 (2017) ("[E]xpanding the *Bivens* remedy is now a disfavored judicial activity" and clarifying that "a *Bivens* remedy will not be available if there are special factors counselling hesitation in the absence of affirmative action by Congress.") (internal citation and quotation marks omitted).

Post-*Ziglar*, courts must conduct a two-part test to determine whether a claim for relief expands the *Bivens* remedy to a new context or category of defendants.  *Id.* at 1849.  First, a court must determine if the *Bivens* claim presents a new context.  *Mack,* 968 F.3d at 317.  The context is new if it is different in a "meaningful" way from the three established *Bivens* cases.  *Ziglar*, 137 S.Ct. at 1849.  "Meaningful" differences can be based on:

> the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the

Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Id.* at 1859-60; *see also Mack,* 968 F.3d at 320 ("[T]he 'proper test' for determining whether a case presents a new *Bivens* context is if the Supreme Court has not previously recognized a claim in that context. A context is 'new' if it implicates a constitutional right not previously recognized by the Supreme Court.") (internal citations omitted).

Second, if the case presents a new context, the court must consider whether "special factors counselling hesitation" against extending *Bivens* into this area exist "in the absence of affirmative action by Congress." *Id.* at 1857. "[T]he inquiry must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Id.* at 1858. "[I]f there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy," then the Judiciary should defer and allow Congress to play its proper role. *Id.* at 1858.

This analysis requires the Court to assess the impact on governmental operations system-wide, including the burdens on government employees who are sued personally, as well as the projected cost and consequences to the government itself. *Id.* Additionally, "the existence of alternative remedies usually precludes a court from authorizing a *Bivens* action." *Id.*, at 1865. In the prison context, the Supreme Court noted that:

> Some 15 years after *Carlson* was decided, Congress passed the Prison Litigation Reform Act of 1995, which made comprehensive changes to the way prisoner abuse claims must be brought in federal court. *See* 42 U.S.C. § 1997e. So it seems clear that Congress had specific occasion to consider the matter of prisoner abuse and to consider the proper way to remedy those wrongs . . . [T]he Act itself does not provide for a standalone damages remedy against federal jailers. It could be argued that this suggests Congress chose not to extend the *Carlson* damages remedy to cases involving other types of prisoner mistreatment.

*Id.* at 1865.

Post–*Ziglar*, the Third Circuit Court of Appeals has held that the "recognition of a cause of action under a constitutional amendment does not mean that such an action can vindicate every violation of the rights afforded by that particular amendment." *Vanderklok v. United States* 868 F.3d 189, 199 (3d Cir. 2017). Here, Plaintiff's complaint raises two claims under the Eighth Amendment, one deliberate indifference claim and one conditions-of-confinement claim.

## 2. Deliberate Indifferent Claim

Only one of the three cases in which the Supreme Court has recognized a *Bivens* claim is potentially relevant to the instant matter. In *Carlson*, the Court recognized an implied damages remedy under *Bivens* for prison officials' failure to provide medical care. *See Carlson*, 446 U.S. at 25.

The instant deliberate indifference claim can be divided into two separate claims: (1) officials' actions prior to illness in which Plaintiff alleged that he was forcibly housed in a contaminated cell with an infected inmate; and (2) officials'

actions after illness, in which Plaintiff alleged that the medical staff were not providing adequate medical care.

The first claim, officials' actions prior to illness, focuses on Plaintiff being forcibly housed in an allegedly contaminated cell with an allegedly infected inmate. This first claim is notably different from *Carlson*. Although both cases involve prison officials' actions regarding an inmate's illness, *Carlson* concerned inadequate medical treatment of the illness after the inmate was already ill, while the instant case concerns officials' actions *prior* to an illness. In other words, *Carlson* concerned alleged failure to treat an illness while this case concerns an alleged failure to prevent an illness. As such, the court finds that Plaintiff's claim regarding a failure to prevent an illness presents a new context that is meaningfully different from the claims previously recognized under *Bivens*. *See Davis v. SCI-Schuylkill*, No. 1:22-CV-1270, 2022 WL 4348462, at *3 (M.D. Pa. Sep. 19, 2022).

Therefore, the court must consider whether there are "special factors counselling hesitation" against extending *Bivens* to this area. Again, the court notes that Plaintiff had the BOP's administrative remedy process available to address his claims. The court acknowledges that there is a factual question regarding whether Plaintiff filed a remedy request and whether the BOP properly characterized his remedy requests regarding these claims. *See supra*. However, regardless of how the BOP actually addressed his claim, the fact that there is an

26

administrative remedy available counsels hesitation against extending *Biven* in this context. *Malesko*, 534 U.S. 61, 69 (2001) (noting that "[s]o long as the plaintiff had an avenue for some redress, bedrock principles of separation of powers foreclosed judicial imposition of a new substantive liability"). "[W]hen alternative methods of relief are available, a *Bivens* remedy usually is not." *Ziglar*, 137 S. Ct. at 1863. Therefore, the court declines to extend *Bivens* to this new context.

The second claim, officials' actions after illness, focuses on Plaintiff's allegations that medical staff were not providing adequate medical care. (Doc. 1, p. 4.) While this claim is similar to the claim in *Carlson*, i.e. failing to provide medical care following the onset of illness, all medical staff have been voluntarily dismissed by Plaintiff. *See supra*. Plaintiff cannot pursue claims against dismissed defendants. Therefore, summary judgment will be granted regarding the deliberate indifference claim.

### 3. Conditions-of-Confinement Claim

As addressed above, the allegations in the complaint can also be construed as a conditions-of-confinement claim. Such a claim is a new context under *Bivens*. A panel of the Third Circuit Court of Appeals provided guidance in such situations in a nonprecedential opinion in *Mammana v. Barben*, 856 Fed.App'x. 411 (3d Cir. May 21, 2021). In the decision, the court rejected the argument that *Carlson* gives footing to an Eighth Amendment conditions-of-confinement claim against federal

officials. *See Mammana*, 856 Fed.App'x. at 414-15.  The plaintiff in *Mammana*

challenged his "confinement in a chilled room with constant lighting, no bedding,

and only paper-like clothing." *Id*.  The court found that, other than sharing a

constitutional amendment and the federal prison setting, there was "little

resemblance" between the plaintiff's conditions-of-confinement claim and the

estate's claim in *Carlson* "against prison officials for failure to treat an inmate's

asthma." *Id*. (quoting *Ziglar*, 137 S. Ct. at 1860).  This court has previously found

that conditions-of-confinement claims regarding inmate exposures to Covid-19

constitute a new context under *Bivens*.  *See, e.g., Walker v. United States*, No.

3:21-CV-1881 2022 WL 1472872, at *4 (M.D. Pa. May 10, 2022).  Therefore, the

court will follow the guidance in *Mammana* and prior decisions, and find that a

conditions-of-confinement claim is a new context under *Bivens*.

Therefore, the court must consider whether there are "special factors

counselling hesitation" against extending *Bivens* to this area.  Again, the court

notes that Plaintiff had the BOP's administrative remedy process available to

address his claims.  The court acknowledges that there is a factual question

regarding whether Plaintiff filed a remedy request and whether the BOP properly

characterized his remedy request.  *See supra*.  However, this claim is being

addressed under the Fed. R. Civ. P. 12(b)(6) standard.  This does not allow the

court to look past the allegations in the complaint and any documentation attached

to the complaint.  *Mayer*, 605 F.3d at 230.  Therefore, regardless of how the BOP actually addressed his claim, the fact that there is a remedy available counsels hesitation against extending *Biven* in this context.  *Malesko*, 534 U.S. at 69 (noting that "[s]o long as the plaintiff had an avenue for some redress, bedrock principles of separation of powers foreclosed judicial imposition of a new substantive liability").  "[W]hen alternative methods of relief are available, a *Bivens* remedy usually is not."  *Ziglar*, 137 S. Ct. at 1863.

Additionally, as the Supreme Court in *Ziglar* explained, "legislative action suggesting that Congress does not want a damages remedy is itself a factor counseling hesitation" and Congress's omission of a "standalone damages remedy against federal jailers" when it passed the PLRA post-*Carlson* "suggests Congress chose not to extend the *Carlson* damages remedy to cases involving other types of prisoner mistreatment."  *Ziglar*, 137 S. Ct. at 1865.  While the Third Circuit has rejected the argument that Congress's inaction in this area "suggests that Congress did not want a damages remedy against prison officials for constitutional violations," *Mack*, 968 F.3d at 324, because the PLRA "cannot rightly be seen as dictating that a *Bivens* cause of action should not exist at all," *Bistrian*, 912 F.3d at 93, a district court can find that congressional silence on prison litigation can still counsel hesitation in *some* contexts.  *See Mammana*, 856 Fed. App'x. at 415.  A conditions-of-confinement claim is different and far more general than the failure

to provide adequate medical treatment alleged in *Carlson*.  As such, the court declines to extend the *Bivens* remedy to this context and the claim will be dismissed with prejudice.

CONCLUSION

For the foregoing reasons, Defendants' joint motion to dismiss and motion for summary judgment will be granted.  All claims raised against Dr. Sommer and the unnamed medical professionals are dismissed without prejudice pursuant to Plaintiff's request for a voluntary dismissal.  Plaintiff's FTCA claim is dismissed with prejudice.  Defendants Kurilla and Bradley will be granted summary judgment on the deliberate indifference claim.  The conditions-of-confinement claim will be dismissed with prejudice.

An appropriate order follows.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Court Judge
Middle District of Pennsylvania

Dated: February 7, 2023